**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

April Henrietta Rivera,                          )
                                                 )
              Plaintiff,                          )
                                                 )          No. CIV 16-164-TUC-CKJ
vs.                                              )
                                                 )                **ORDER**
The Town of Patagonia, et al.,                   )
                                                 )
              Defendants.                         )
_____          )

        Pending before the Court is the Renewed Motion to Dismiss and Motion for
Sanctions (Doc. 19) filed by Defendant Michael J. Massee ("Massee").  A response has not
been filed.

*Factual and Procedural Background[1]*

        Plaintiff April Henrietta Rivera ("Rivera") obtained an Order of Protection against
her ex-husband as a result of a domestic violence incident on March 15, 2014. The Order
of Protection prohibited the ex-husband from having contact with Rivera and from going on
or near her place of work or residence.  Prior to April of 2014, Rivera resided at 289

_____

        [1]The Court thoroughly summarized the alleged facts in this case in its August 10,
2016, Order.  As the current pending Motion to Dismiss only addresses the claim against
Massee, the Court's summary of facts herein will focus on the allegations involving Massee.

1   Duquesne Space # 4.  This mobile home was owned by her ex-husband and another

2   individual.  Rivera owned another mobile home at 289 Duquesne Space # 2.

3          At some time before April 19, 2014, the Patagonia Marshal's Office received a note

4   from Rivera's former father-in-law, requesting that Rivera be removed from Space #4

5   without any further documentation or information. On April 19, 2014, without any eviction

6   proceedings or related court orders, the Marshal's Office delivered the letter to Rivera and

7   informed her that if she did not leave, she would be arrested for criminal trespass. Upon

8   receiving the letter, Rivera called the Santa Cruz County Sheriff's Department on both the

9   emergency and non-emergency lines requesting that a deputy respond. She alleged that the

10  Marshal's Office had threatened her and that she feared for her liberty and safety.

11         Patagonia law enforcement officers later arrived at Space #4 accompanied by Deputy

12  Gonzales of the Santa Cruz County Sheriff's Department.  Rivera refused to answer the

13  door.  When a check on Rivera's vehicle indicated it was registered to P.O. Box 82

14  Patagonia, Arizona, 85624, rather than the address it was parked, law enforcement called

15  for a tow truck to remove the vehicle despite MVD records and previous law enforcement

16  reports indicating Rivera's physical address as that address. Deputy Gonzales advised

17  Patagonia law enforcement officers that without an eviction order there is no legal authority

18  to remove someone's vehicle from their place of residence; Patagonia law enforcement

19  officers then advised Rivera that her vehicle was being towed.

20         Upon hearing that her vehicle would be towed, Rivera exited her mobile home and

21  moved the vehicle from Space #4 to Space #2, the space that she owned.  In doing so,

22  Rivera backed out of Space #4 and moved forward approximately fifty (50) to sixty (60) feet

23  at a speed of approximately four (4) miles-per-hour into the parking spot for Space #2.

24  After Rivera exited her vehicle, Patagonia law enforcement handcuffed Rivera on suspicion

25  of Driving Under the Influence.  A subsequent intoxilizer breath test show 0.00%.

26         When a warrant for Rivera's blood was obtained, Rivera was asked which arm she

27  preferred to have blood drawn from.  Although Rivera remained silent, she did roll up a

28  sleeve, exposing an arm for testing.  Considering Rivera's silence a refusal, the law

1   enforcement officer filed an Implied Consent Affidavit with MVD.  Rivera's vehicle was
2   impounded as incident to the arrest.

3       As a result of the events on April 19, 2014, Rivera was cited for Interfering with
4   Judicial Proceedings for not answering questions pursuant to a court order; however, there
5   was no court order.  She also received two citations for Obstructing Governmental
6   Operations for not signing her complaint and not answering her door.  Rivera was further
7   cited for Preventing the Use of a Telephone in an Emergency and Driving Under the
8   Influence.  All of these charges arising from the events on April 19, 2014 were later
9   dismissed.

10      After Rivera was served with the Implied Consent Affidavit, Rivera made a timely
11  request for a hearing.  However, the MVD later rejected the Affidavit as incomplete and
12  notified Rivera that the Implied Consent suspension was void for now but that the Affidavit
13  could be re-filed.  Patagonia law enforcement later re-filed an Amended Affidavit, but
14  Rivera was not served or notified of the Amended Affidavit and thus did not have an
15  opportunity to request a hearing despite the MVD stating that Affidavit was served by
16  officers.

17      Rivera moved to Elgin, Arizona.  On June 17, 2014,  Rivera went to Sonoita, Arizona
18  to meet with a constable for the purpose of being served with an eviction notice for Space
19  #4. When she left the Constable's Office, the constable called the spouse of a Patagonia law
20  enforcement officer to inform her that Rivera was driving from Sonoita to Patagonia.  Rivera
21  was pulled over for Driving on a Suspended License even though she committed no other
22  traffic violation prior to the stop.  Rivera was unaware that her license was suspended and
23  when the deputy informed her of the reason for the stop, she rolled up her window, locked
24  the door, and called her attorney.  After counsel spoke with the deputy, her attorney advised
25  her to step out of the vehicle.  Rivera was cited for Driving on a Suspended License,
26  Resisting Arrest and Resisting an Order for rolling up the window and locking the car door,
27  Interfering with Judicial Proceedings for failing to notify MVD of her change of address and
28  again for violating the condition of her release from the Driving Under the Influence charge.

1   On March 15, 2015, the State dismissed all of the charges originally filed against Ms.

2   Rivera for the events at the trailer park on April 19, 2014.  However, the State then filed

3   new charges for Reckless Driving, Endangerment, and No License in Possession.  The No

4   License in Possession charge was dismissed by the State when it was noted that the incident

5   occurred on private property and that the charge requires that the incident be on a highway.

6   On April 17, 2015, however, the State filed a new charge, No Valid License, on the basis

7   that Rivera did not show her license during the events on April 19, 2014. A MVD records

8   check reflects that Ms. Rivera had a valid license on that date, and the police reports from

9   that incident include Ms. Rivera's driver's license number.  The State also filed Assault

10  charges against Ms. Rivera on April 17, 2015.

11  The Endangerment, Reckless Driving, and a newly added charge of Assault stem

12  from assertions by a Patagonia law enforcement officer and the spouse of an officer that,

13  after Rivera backed out of Space #4 and began moving forward to Space #2, an officer

14  stepped in front of her car with his hands up and then moved out of the path of the car as

15  Rivera moved forward to Space #2.  At a jury trial for these charges, testimony was

16  presented that the officer was neither injured nor placed in any reasonable apprehension of

17  imminent physical injury as a result of Rivera moving her vehicle.  Further, Deputy

18  Gonzales stated in an interview that he did not see Rivera do anything which, in his opinion,

19  would amount to Reckless Driving or Endangerment.  Deputy Gonzales stated that he did

20  not see the officer engage with Rivera's vehicle, step in front of it, try to stop it, or see

21  Rivera ignore any commands given to her while she was moving her vehicle.  Massee, the

22  prosecutor, took these charges to trial.  On the second day of trial, Massee dismissed all

23  charges.

24  On March 3, 2016, Rivera filed a complaint in the Superior Court of the State of

25  Arizona, County of Santa Cruz. On March 22, 2016, the case was removed to the District

26  Court of the United States pursuant to 28 U.S.C. §1441(a) because this Court has original

27  jurisdiction, pursuant to 28 U.S.C. §1331, over Ms. Rivera's claims asserting violations of

28  the Constitution and laws of the United States.  Following an Amended Complaint and

1    Motions to Dismiss, Rivera filed a Second Amended Complaint[2] on September 6, 2015.

2            On September 29, 2016, Massee filed a Renewed Motion to Dismiss and Motion for
3    Sanctions (Doc. 19).  No response has been filed.

4

5    *Local Rule of Civil Procedure 7.2(i)*

6            The applicable local rule provides that, if a response is not filed, that lack of response
7    may be "deemed a consent to the . . . granting of the motion and the Court may dispose of
8    the motion summarily."  LRCiv 7.2(I).  The Court finds granting the Renewed Motion to
9    Dismiss is appropriate.  Nonetheless, the Court will briefly discuss the merits.  However,
10   the Court does not find it appropriate to summarily grant the Motion for Sanctions.

11

12   *Renewed Motion to Dismiss* (Doc. 19)

13           As the Court stated in its August 10, 2016, Order, a complaint need not plead detailed
14   factual allegations.  However, the factual allegations that are included "must be enough to
15   raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S.
16   544, 555 (2007).  As such the complaint must allege "enough facts to state a claim to relief
17   that is plausible on its face."  *Id.* at 570. When a court is considering a motion to dismiss,
18   allegations that are mere conclusion are not entitled to the assumption of truth if
19   unsupported by factual allegations that allow the court "to draw the reasonable inference that
20   the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663-64
21   (2009).

22           Rivera alleges a claim of malicious prosecution against Massee.  As Massee points
23   out, the Court determined in its August 10, 2016, Order that Rivera had originally failed to
24   state a claim upon which relief could be granted.  However, the Court provided Rivera an

25   _____

26           [2]This document is titled as an Amended Complaint (Doc. 17).  The Notice of Errata
27   referencing the document, however, refers to it as a Second Amended Complaint.  Moreover,
     Rivera has previously filed an Amended Complaint.  The Court will refer to this document
28   as the Second Amended Complaint.

opportunity to allege additional facts which, if accepted as true, would "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Prosecutorial functions are entitled to absolute immunity:

> Determining what functions are prosecutorial is an inexact science.  The functions are those "intimately associated with the judicial phase of the criminal process," in which the prosecutor is acting as "an officer of the court."  [Citation omitted.] Absolute immunity also protects those functions in which the prosecutor acts as an "advocate for the State," even if they "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."  [Citation omitted.]  These actions need not relate to a particular trial and may even be administrative in nature, yet are connected to the trial process and "necessarily require legal knowledge and the exercise of related discretion." [Citation omitted.]  Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out.  [Citation omitted.]  Prosecutors are absolutely immune from liability for the consequences of their advocacy, however inept or malicious, because it is filtered through a neutral and detached judicial body[.]

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 912-13 (9th Cir. 2012).  The *Lacey* court also stated:

> [Prosecutors] are not necessarily immune for actions taken outside this process, including actions logically – though not necessarily temporally – prior to advocacy, such as those normally performed by a detective or police officer, like gathering evidence, [citation omitted], and those separate from the process, like providing legal advice to the police[.]  [Citation omitted.]

*Id*. at 913.

Rivera's Second Amended Complaint includes additional factual allegations as to Massee:

> At a court hearing after Ms. Rivera's June 17, 2014 arrest, but prior to the March 15, 2015 court hearing, Defendant Massee approached defense counsel and verbally offered to dismiss all of the (then) current charges against Ms. Rivera and allow her to plead guilty to one count of no license in possession and pay a fifty dollar fine. This offer was conditioned on Ms. Rivera waiving any claims to potential § 1983 violations.  This offer was not part of the charging function of the prosecutor' office and was and attempt to minimize the town's and the individuals exposure to a potential civil lawsuit.  Defendant Massee's offer was declined and the case continued.

Second Amended Complaint (Doc. 17), ¶ 20.  This conduct was not pre-advocacy nor was it separate from the judicial process.  Rather, Massee was performing functions intimately associated with the judicial phase of the criminal process – that of analyzing evidence,

internal decision-making, and offering/negotiating a deal between the parties.  Further, Massee was acting as an advocate for the government and his actions necessarily required legal knowledge and the exercise of discretion.

Although Rivera argues this conduct was against public policy, Rivera does not cite to any authority for that public policy.  *See e.g. Town of Newton v. Rumery*, 480 U.S. 386, 398 (1987) ("Because release-dismissal agreements may further legitimate prosecutorial and public interests, we reject the Court of Appeals' holding that all such agreements are invalid per se.").  The Court finds Massee is entitled to absolute prosecutorial immunity.  The Renewed Motion to Dismiss will be granted and the claim against Massee will be dismissed with prejudice.

*Motion for Sanctions* (Doc. 19)

Massee asserts Rivera's counsel has already sought to use this lawsuit for collateral gain in another criminal prosecution in Patagonia.  Massee asserts the doctrine of prosecutorial immunity was designed to curb such actions.  While the Court agrees with Massee that the newly alleged facts do not provide a basis to limit or remove the prosecutorial immunity in this case, the Court does acknowledge that, while release-dismissal agreements are not *per se* invalid, the particular circumstances of a case may invalidate such an agreement.  *See e.g.,  Lynch v. City of Alhambra*, 880 F.2d 1122 (9th Cir. 1989); *Cain v Darby Borough*, 7 F3d 377 (3rd Cir. 1993).  The Court does not find it appropriate to impose sanctions in this case.

Accordingly, IT IS ORDERED:

1.       Massee's Renewed Motion to Dismiss (Doc. 19) is GRANTED.  Defendant Massee and the claims against Massee are DISMISSED WITH PREJUDICE from this action.

. . . . .

. . . . .

2.      Massee's Motion for Sanctions (Doc. 19) is DENIED.

DATED this 4th day of January, 2017.

Cindy K. Jorgenson
United States District Judge