**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

April Henrietta Rivera, )
)
     Plaintiff, )
)    No. CIV 16-164-TUC-CKJ
vs. )
)       **ORDER**
The Town of Patagonia, et al., )
)
     Defendants. )
_____)

     Pending before the Court are the Motion for Partial Summary Judgment (Doc. 56) filed by Plaintiff April Henrietta Rivera ("Rivera") and the Motion for Summary Judgment (Doc. 53) filed by Defendants Town of Patagonia, Marshal Joseph A. Patterson ("Patterson"), and Deputy Marshal Ronald Davis ("Davis") (collectively, "Defendants"). Also pending before the Court are Rivera's Motion in Limine (Doc. 56) and Motion to Strike (Doc. 59).

     The parties have requested this matter be set for oral argument. However, the issues are fully presented in the briefs and the Court finds it would not be assisted by oral argument. The Court declines to schedule this matter for oral argument. LRCiv 7.2(f).

     Summary judgment will be granted in favor of Defendants and against Plaintiff for the reasons stated herein.

I. *Factual and Procedural Background*

     On March 15, 2014, Plaintiff April Henrietta Rivera ("Rivera") lived in a mobile home with her ex-then husband Ricky Rivera ("R. Rivera") at 289 Duquesne Space #4

("Duquesne residence") in Patagonia, Arizona. The mobile home was owned by Tony Valenzuela. Rivera may have also owned another mobile home at 289 Duquesne Space #2, but she continued to reside at Space #4 when she separated from her husband. The parties dispute whether Rivera was a tenant at that location as recognized under the Arizona Residential Landlord Tenant Act.

At approximately 9:45 p.m., Davis responded to the Duquesne residence for a reported domestic disturbance.[1] Rivera was seated on the ground and was crying. R. Rivera, who had blood on his face from a wound above his right eyebrow, was seated on the porch. Davis approached R. Rivera, had him stand up, and placed him in handcuffs for the protection of both Davis and R. Rivera.

Davis went to speak to Rivera, but she was crying uncontrollably, being consoled by two other females. These other females did not witness the incident.

Davis returned to R. Rivera, who stated that he had been hit in the head with a bottle. Davis took photographs of the injury. R. Rivera was then attended to by EMTs. R. Rivera stated that he had thrown Rivera's clothes out of the trailer. R. Rivera invoked his rights and Davis did not ask him anything else, other than to get his consent to take pictures inside the residence. R. Rivera remained handcuffed throughout this process, and the handcuffs were only removed once Davis finished photographing the scene.

Davis made the determination to arrest Rivera for disorderly conduct - fighting.

Davis returned to Rivera and asked the EMTs if they would be transporting Rivera; the EMTs advised Davis that Rivera had refused medical transport. Davis advised Rivera of her Miranda rights, but did not get a verbal acknowledgment of those rights. Davis advised Rivera that she was being arrested for fighting and would be transported to the Marshal's Office. Rivera waived her Miranda rights. R. Rivera retrieved a pair of jeans and some shoes, which Rivera put on.

---

[1]Law enforcement in the Town of Patagonia is provided by the Patagonia Marshal's Office ("Marshal's Office").

One of the EMTs told Davis that Rivera had a history of being violent when transported, and had tried to kick out the window of a police vehicle.[2]

At the Marshal's Office, Rivera stated that a disagreement had ensued when R. Rivera asked to speak to her. She stated that she had consumed two beers that afternoon/evening. Rivera did not want to talk to R. Rivera, so she turned up the volume on the TV. R. Rivera tried to grab the remote from her, and she resisted. Rivera stated that R. Rivera then put her in a choke hold, and she bit him to get him to let her go. He sat down, and she hit him in the head with a beer bottle. R. Rivera then started throwing Rivera's things out of the residence. Rivera stated she attempted to go to bed, but R. Rivera attacked her again (throwing her around), so she grabbed his hair, and he threw her out of the Duquesne residence.

Davis did not observe any redness around Rivera's neck, but Rivera did have scrapes on her elbow, blood on her shirt and her shirt was ripped in the back. When Davis asked Rivera what injuries she had, Rivera stated she had a broken rib, a scratched eye, contusions and abrasions all over her body and her legs. Border Patrol Agent Chamberlain took photographs of Rivera's injuries.

Rivera refused to provide information during the booking process. Rivera denies that she was uncooperative and states that her traumatic experience as a domestic violence victim may have contributed to what was perceived by Defendants as a refusal to cooperate. Because a medical clearance could not be accomplished due to Rivera's refusal to answer questions, Davis asked for guidance from the Santa Cruz County Detention Facility ("SCCDF"); Davis was advised by the nurse at the SCCDF to take Rivera to the jail, which he did. Rivera continued to refuse to answer questions at the SCCDF. Rivera also refused to comply with requests and engaged in other non-compliant conduct (e.g., going limp,

---

[2]Rivera's expert witness stated that this information was important for Davis to know in the context of taking someone into custody.

1    spitting or slobbering).[3]

2    Rivera asserts the charges Rivera received from the events of March 15, 2014 were

3    later dismissed, but does not provide a supporting citation to the record.

4    On April 1, 2014 Rivera obtained an order of protection against R. Rivera because

5    of the events of March 15, 2014.  The order of protection prohibited R. Rivera from having

6    contact with Rivera and from going to her residence or place of employment.  The order of

7    protection was served on R. Rivera on April 2, 2014 by Davis.

8    Later on April 2, 2014, Rivera asserts she went to the apartment building to show an

9    apartment and discovered R. Rivera.[4]  Defendants assert R. Rivera was there working on a

10   vacant apartment that would not be ready to rent for several weeks.  Rivera asserts R.

11   Rivera's presence was in violation of the protective order.  Rivera asserts she was at her

12   place of work and had a valid order of protection that prevented R. Rivera from being at her

13   place of work.

14   R. Rivera went to the Marshal's Office to report Rivera's attempt to contact him.  R.

15   Rivera also requested that he be accompanied to the trailers listed on the restraining order

16   (the one where he and Rivera lived and the one they were fixing up) for a one-time

17   opportunity to retrieve his personal items and tools he needed for work, as permitted in the

18   restraining order.  Defendants assert Davis confirmed the terms of release and the order of

19   protection from the court and prosecutor.  Rivera asserts Davis reported this information to

20   Defendant Marshal Joe Patterson ("Patterson"), who decided that Rivera's contact with R.

21   Rivera violated the conditions of release from the previous domestic violence charges.

22   Rivera went to the Marshal's Office about 30 minutes after R. Rivera and demanded

23   that R. Rivera be arrested for violating the conditions of the order of protection.  Defendants

24

25   _____

26      [3]Rivera asserts that the alleged spitting was coughing that expelled some blood.

27      [4]Defendants point out that Rivera does not provide a supporting citation to the record

28   for this assertion.

                                    - 4 -

assert Rivera argued with Davis and then left in an irate and belligerent manner.[5]  Rivera denies that she was irate or belligerent.

Patterson and Deputy Marshal John York "(York")" met R. Rivera at the trailers.  R. Rivera told Patterson that Rivera was using the court process to intentionally harass or intimidate.  Davis then arrived at the trailers and informed Patterson that R. Rivera could have a one time access to the location to retrieve items that belonged to him.

Patterson learned that Rivera was not leasing the Duquesne residence.  Valenzuela told Patterson (over the phone) that the space was rented to Thomas Rivera ("T. Rivera"), R. Rivera's father.  Valenzuela advised Patterson that he would like Rivera removed from the residence and that the rental contract or verbal agreement was voluntarily terminated as R. Rivera had been served an order of protection after a fight.

R. Rivera began gathering his items.  Rivera approached but was asked to step away; she refused.  Defendants asserts Rivera continued to walk around and speak to R. Rivera, refusing directives by Patterson.[6]  Rivera was then detained in the back of York's vehicle while R. Rivera retrieved his belongings.  Rivera was cited with interfering with judicial proceedings due to her failure to abide by the conditions of release.  Rivera admitted at her deposition that she knew that, as a condition of her release, she was not to have contact with R. Rivera.  Rivera asserts, however, that her actions were not a violation of her conditions of release.  Rivera asserts that, prior to her being charged, the only investigation conducted by Defendant Patterson was to speak with R. Rivera.  Defendants assert additional investigation was conducted, including talking to Rivera, witnessing Rivera attempt to

---

[5]Rivera testified at her deposition that she had no recollection of having any contact with R. Rivera that day at their place of employment, and R. Rivera made a false statement when he reported that she did.

[6]Rivera points to the statement in Patterson's report that Rivera was "making statements and walking around. Her actions were similar to someone who knew how to anger or elicit a response from a significant other" (Rivera Statement of Facts ("SOF"), Ex. 1, p. 85), and asserts that Patterson did not know what Rivera was doing to elicit a response.

initiate contact with R. Rivera after being ordered multiple time to cease doing so and other observations, and contacting the court. Rivera asserts this charge was later dismissed, but does not cite to the record in support of this assertion.

Patterson was provided with a hand-written paper from T. Rivera asking that Rivera be removed from the residence. Patterson provided the document to Rivera and advised her she was being asked to leave the residence. Rivera refused to answer and became upset she was being asked to leave.

Sometime prior to April 19, 2014, Patterson composed a letter on behalf of Valenzuela requesting that Rivera vacate the Duquesne residence. Patterson delivered that letter to Rivera on April 19, 2014. The parties dispute whether Patterson threatened Rivera with arrest if she failed to leave immediately. Patterson was not in possession of a court order or valid eviction notice when he told Rivera that she was committing a criminal trespass. Defendants assert that, because the space was owned by Valenzuela, rented by T. Rivera, and Rivera was told by T. Rivera she was no longer welcome on the premises, and Rivera had no rental agreement and did not pay rent to live at the space, Rivera was not a tenant with legal rights at the Duquesne residence. Patterson left the Duquesne residence.

After reviewing the letter, Rivera called the Santa Cruz County Sheriff's Office ("SCCSO") requesting assistance; she did not want the Marshal's Office to respond. The SCCSO dispatcher advised Patterson that Rivera was tying up the 911 line without providing any information to indicate an emergency. Patterson and Davis responded. Rivera would not come to the door; Patterson and Davis left. Rivera asserts she called 911 because Patterson was trying to illegally force her from her home and threatening to arrest her for trespassing if she did not leave.

Rivera contacted the SCCSO office and requested assistance. Defendants assert Patterson learned Rivera was again tying up the 911 line. Rivera denies she was tying up the 911 line. Patterson, Davis, SCCSO Deputy Alejandro Gonzales ("Gonzales"), and Volunteer Toni Hansen returned to the Duquesne residence. Gonzales attempted to speak with Rivera. Patterson learned Rivera was still on the 911 line. Rivera terminated the call

and was then advised she was under arrest for the abuse of the 911 emergency line. Patterson cited Rivera for a violation of A.R.S. §13-2915(A)(2), which governs party line violations; Patterson stated at his deposition that he was not familiar with the specifics of that statute and that he did not believe that she was interrupting somebody on a party line to make a call. Patterson wrote on the citation "preventing use of a phone in an emergency." (Rivera SOF, Ex 1, page 95). Patterson requested Rivera come out of the residence and sign the summons and complaint. Rivera refused to return outside. Patterson was informed that Rivera was on the non-emergency line and was no longer tying up the 911 emergency system.

Patterson checked the plate of a vehicle parked in front of the Duquesne residence. The registration came back as expired, and not as registered to the Duquesne residence.[7] Patterson called to have the vehicle towed.[8] Rivera left the residence, got into the car, and began to back out. Patterson told Rivera to stop and she refused. Defendants assert Patterson stood in the road and Rivera drove towards him; Patterson had to move out of the road to avoid being hit; Rivera denies these assertions. Rivera drove a short distance and pulled into the driveway at 289 Duquesne Space #2.

After Rivera exited her vehicle, she was arrested by Patterson for driving under the influence and was transported to the Marshal's Office. Patterson based the arrest for driving under the influence on his belief that Rivera was operating her vehicle while under the influence of marijuana. Specifically, Patterson's report indicates that Rivera's observed actions were not reasonable, she had visible signs of impairment (confused speech, watery bloodshot eyes, disheveled and dirty clothing), she wore limited clothing, she was running

---

[7]Rivera points out that it is not illegal to have a vehicle registered to a post office box instead of a physical address. Rivera asserts Patterson did not have the authority to call a tow truck to the vehicle towed from private property. Patterson asserts the vehicle was not towed from private property.

[8]The vehicle was subsequently towed. Defendants assert the vehicle was towed for safekeeping, incident to Rivera's arrest for DUI.

around barefoot, she had a strong odor of burned marijuana coming from the residence and her person, and she had answered the door with paraphernalia in her hand. Patterson testified at his deposition that the smell of marijuana itself is not sufficient probable cause to arrest someone for DUI. No field sobriety tests were performed, nor was an intoxilizer test performed on Rivera at the arrest scene.

Rivera was transported to the Marshal's Office. Rivera refused to speak to Patterson or Davis, refused to answer their questions, refused to comply with their directives, and flopped onto the floor when asked to sit down. Rivera was asked multiple time to submit to a test of her breath, blood or other bodily substance. Rivera did not respond or comply with directives. Eventually an intoxilizer test was performed on Rivera at the Patagonia Marshal's Office with the result of 0.00% alcohol in her blood.[9] Defendants assert Rivera was not blowing sufficiently to get a reading on multiple occasions.

Eventually, Rivera rolled up her sleeve and exposed her arm for a blood draw.[10]

A warrant was obtained. Rivera points out that the affidavit sworn out by Defendants to secure the search warrant indicated that Rivera had refused all sobriety tests that the officers had requested her to perform. However, Rivera did not refuse to take an intoxilizer test, nor did Defendants ever ask Rivera if she would submit to field sobriety tests. Defendants assert that Patterson had offered Rivera an opportunity to perform field sobriety tests, but that Rivera either had not responded or declined.

Despite exposing an arm from which the blood could be drawn, Patterson and Davis treated Rivera's silence as a refusal and filed an Implied Consent Affidavit with the Arizona MVD. Defendants assert that the decision of what constituted consent in these circumstances was within the sole discretion of Davis. Further, Defendants point out that

---

[9]Rivera did not consent to the intoxilizer test until after she was informed a warrant was being sought.

[10]Defendants point out that Rivera did not respond verbally to the questions or provide express consent to the blood draw as required by law.

Rivera did not roll up her sleeve until after she learned that a warrant had been obtained. Davis indicated that, despite Rivera rolling up her sleeve and offering her arm, because of Rivera's past violent activity he did not feel safe putting the needle into her arm. Davis never attempted to insert the needle into Rivera's arm. Davis told Rivera if she did not cooperate he was going to charge her with interfering with judicial proceedings and obstructing governmental operations. Ultimately, a blood drawn was not taken.

After the events of April 19, 2014, Rivera was cited for interfering with judicial proceedings for not answering questions pursuant to a court order, for not complying with the terms of the search warrant, and not consenting to the blood draw. The only court order that Defendants had on that date was a search warrant; the search warrant did not require Rivera to answer the officer's questions.

Rivera also received two other citations for interfering with judicial proceedings for not signing her citation and not answering her door when Defendants were attempting to contact her. Rivera asserts that, on March 15, 2015 the prosecutor dismissed all the charges filed against Rivera for the events at the mobile home park on April 19, 2014. However, new charges were filed from the same set of events on April 19, 2014, including obstructing governmental operations, reckless driving, endangerment and no license in possession.[11]

Patterson testified during his deposition that a charge of obstructing a governmental operation requires the use or threat to use physical force. When asked what physical force Rivera used or threatened to use against Defendants on April 19, 2017, Patterson indicated that he did not recall.

The Implied Consent Affidavit that was filed by Patterson after the April 19, 2014 incident was later rejected by the MVD. Patterson later filed an Amended Affidavit. The Amended Affidavit was not served on Rivera during the course of events that are the subject of this lawsuit.

---

[11]Defendants point out Rivera has not provided a citation to the record for this assertion.

On April 21, 2014, Rivera called 911 to report that T. Rivera was looking at her, claiming this was a violation of the order of protection that T. Rivera and R. Rivera had taken out against her. Rivera was informed that this was not a violation of R. Rivera's order, and it was not a violation of Rivera's order of protection since T. Rivera was not listed on her order.

On April 25, 2014, Rivera contacted the Marshal's Office complaining that R. Rivera had again violated the court order of protection by contacting Rivera's friend Ann Mihalik. R. Rivera had texted Ms. Mihalik, telling her that he was no longer paying for a shed on the property, and she should remove any of her belongings before the shed was picked up. The Marshal's Office determined there was no violation.

On April 26, 2014, Patterson received a call from Valenzuela, who was concerned about items being removed and sold out of the Duquesne residence. Rivera was removing property from the Duquesne residence and selling it in front of 289 Duquesne Space #2. Deputies responded and took photos of the items; Rivera voluntarily returned money to at least one of the buyers for one of the items she sold that was not hers, but Rivera was not cited.

On May 1, 2014, Rivera complained that T. Rivera was in violation of his own order of protection against her. Rivera was again informed that this was not a violation for which T. Rivera could be cited.

On May 2, 2014, the Marshal's Office left another letter for Rivera from the landlord requesting that she vacate the premises.

On May 8, 2014, Rivera contacted the SCCSO alleging that T. Rivera had violated his order of protection. Rivera asserts that, when Patterson went to the area of the alleged violation, he did not find anything matching the description of the violation area. Without conducting any further investigation Patterson concluded that there had been no violation. Defendants assert Rivera was contacted and again explained that this was not a violation of any order of protection, to which Rivera responded that Patterson was ridiculous and had no idea about the law. Rivera was cited for false reporting to a law enforcement officer.

Rivera asserts that Patterson issued the citation despite writing in his report from the incident that "the subject is extremely confused about the order of protection." (Rivera SOF, Ex 1, p. 133). Rivera asserts this charge was later dismissed.

On June 15, 2014, R. Rivera reported to the Marshal's Office that his truck parked at the Duquesne residence had been vandalized and property had been taken. The vehicle had been smashed up, paint poured on it, and the tires deflated. The Duquesne residence was trashed and water left running. Rivera was suspected of the vandalism and theft. During the investigation, it was learned that Rivera's license had been suspended.

On June 17, 2014, Rivera drove to Sonoita, Arizona to meet with the local constable for the purpose of being served with an eviction notice for the Duquesne residence in Patagonia. The Elgin Constable called the Marshal's Office to inform them that Rivera was on her way to Patagonia. Davis and Patterson were in training and Patterson's wife answered the call. She informed Patterson and Davis that Rivera was on her way to Patagonia. Patterson instructed Davis to leave the training and to stop Rivera.[12] Defendants knew that Rivera's license had been suspended.

When Davis notified Rivera of the reasons for her being stopped, she rolled up the car windows, locked the car doors and called her attorney. After consulting with her attorney, Rivera exited the car and was charged by Davis with driving on a suspended license and resisting arrest. Rivera asserts the resisting arrest charge was for the locking of the car doors and rolling up the car window, while Defendants assert the charge was for Rivera's failure to get out of the vehicle as ordered by Davis. Davis also charged Rivera with interfering with judicial proceedings for failing to notify MVD of her change of address[13] and again for violating the conditions of her release from the driving under the

---

[12]Defendants point out that Rivera has failed to provide citations to the record for these allegations.

[13]Rivera asserts she was cited for this violation despite Davis not knowing when Rivera moved from Patagonia to Elgin; Davis testified at his deposition that he was aware Rivera had moved from the Duquesne residence at the end of April. Defendants assert Davis

influence charge.[14]  The vehicle was impounded.

The suspended license charge stemmed from Rivera's prior arrest for DUI in which the Implied Consent Affidavit had been rejected by MVD but then refiled by Defendants. Rivera had not been served with the Amended Implied Consent Affidavit and Rivera asserts she had no knowledge that her license had been suspended.  When stopped on June 14, 2014,  Rivera was in possession of the Implied Consent Affidavit she received on April 19, 2014, but not the amended Affidavit that was issued after the Affidavit was refiled, because it was never served on her.

On June 24, 2014, Rivera's residence in Elgin was searched pursuant to a warrant obtained during an investigation of the vandalism and theft that occurred at the Duquesne residence on June 15, 2014.  Rivera asserts the search was conducted as part of the ongoing harassment of Rivera and violation of her rights by Defendants.  A television set belonging to R. Rivera was recovered.

On March 3, 2016, Rivera filed a complaint in the Santa Cruz Superior Court.  The action was removed to this Court on March 22, 2016.

On August 10, 2016, this Court issued an Order granting a Motion to Amend Complaint filed by Rivera (Doc. 15).  The Order also granted in part and denied in part Defendants' Motion to Dismiss.  *See* January 4, 2017 Order (Doc. 21) (granting Massee motion to dismiss).  The Court determined the following claims were allowed to proceed: Count I(a), Fourth Amendment claim to be free from unreasonable searches and seizures, Count I(b), Fourth Amendment claim to be free from the unequal enforcement of laws, Count I(c), Fourteenth Amendment due process claim, and Count VII, malicious prosecution, against Defendants Patterson and Davis.

was not sure if the refiled affidavit had been served, but that when Davis ran Rivera's licence it came back in the system as suspended.

[14]A jury trial was held on these charges and, after one day of testimony, the prosecutor dismissed all the charges pending against Rivera.

On December 12, 2017, Rivera filed a Motion in Limine (Doc. 50). A response was filed on December 29, 2017 (Doc. 57). Also on December 29, 2017, Rivera filed a Motion to Strike (Doc. 59). A response was filed on January 4, 2018 (Doc. 62).

On December 14, 2017, Defendants filed a Motion for Summary Judgment (Doc. 53); a response (Doc. 65) and a reply (Doc. 68) have been filed. Also on December 14, 2017, Rivera filed a Partial Motion for Summary Judgment (Doc. 56). A response has been filed (Doc. 63).

II. *Motion to Strike* (Doc. 59)

Rivera requests Defendants' response to the Motion in Limine be stricken as untimely. Defendants do not dispute that the response was untimely filed. Rather, Defendants acknowledge counsel mistakenly and inadvertently calendared the response deadline based on the 2016 Federal Rules of Civil Procedure. Accordingly, Defendants request the Court allow a three day extension for the filing of the response and accept the response.

The Court may, for good cause, extend a deadline if a party failed to act because of excusable neglect. Fed.R.Civ.P. 6(b)(1)(A). The Supreme Court has set forth four factors to be considered in determining if excusable neglect exists: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855-56 (9th Cir. 2004); *see also Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674 (9th Cir. 2009). In this case, the delay itself does not prejudice Rivera, nor does the minimal delay impact the judicial proceedings. While the reason for the delay was within the reasonable control of Defendants' counsel, the Court finds the defense was acting in good faith. The Court will deny the Motion to Strike and will accept the response to the Motion in Limine.

III.  *Motion in Limine* (Doc. 50)

It does not appear Rivera is seeking resolution of her Motion in Limine for consideration of the summary judgment issues.  However, as the Court has found herein that summary judgment in favor of Defendants is appropriate, this motion is moot and will be denied as such.

IV.  *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Scheuring v. Traylor Bros.*, 476 F.3d 781, 784 (9th Cir. 2007).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Celotex Corp.*, 477 U.S. at 248 (internal quotes omitted); *see also United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("a plaintiff cannot rely on mere allegations but rather must "set forth" by affidavit or other evidence "specific facts").  The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23.  Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine.  *Anderson*, 477 U.S. at 248, 106

S.Ct. at 2510.  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial.  *Id.*  "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (citation omitted).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor.  *Id.* at 255.  Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (citation omitted).

V.  *Consideration of Admissible Evidence*

The Court is only to consider admissible evidence.  *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken).  Moreover, "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form.  [They] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

A "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda.  *Varig Airlines*, 690 F.2d at 1238.  Declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991).  Indeed, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007) (citation

omitted).  Moreover, statements must allege personal knowledge.  *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990) ("Like affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment."); *see also Block v. Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir. 2001); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (quoting *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969) ("[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact").  Additionally, the court is to review the record as a whole, but must disregard evidence favorable to the moving party that the jury is not required to believe and must give credence to the uncontradicted and unimpeached evidence of the moving party, at least "'to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000) (citation omitted).

VI.  *Probable Cause*

Rivera relies on substantive rights conferred by the Fourth and Fifth Amendment, as incorporated to the states through the Fourteenth Amendment.  Specifically, Rivera asserts that Patterson and Davis lacked probable cause for each of the times they arrested Rivera, in violation of her Fourth Amendment right to be free from unreasonable searches and seizures.

The parties dispute whether probable cause existed for each of the arrests of Rivera.  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *Henry v. United States*, 361 U.S. 98, 12 (1959); *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003).  In order to show that the police had probable cause, "the government is required to prove only that 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of

which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United States v. McCarty*, 648 F.3d 820, 838 (9th Cir. 2011) (citing *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005)); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

"Whether probable cause exists depends on the totality of facts available to the officers, who may not disregard facts tending to dissipate probable cause." *Sialoi v. San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (internal quotations and citation omitted). If probable cause exists to make an arrest, the arrest is lawful regardless of the arresting officer's subjective intent. Under *Devenpeck*, the subjective reason that the officer arrests the offender is irrelevant so long as the available facts suggest that the offender was committing a crime. *Tatum v. City Council of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). Moreover, "[p]robable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each." *Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008).

A. *March 15, 2014 Arrest*

Defendants move for summary judgment as to the arrest of Rivera on March 15, 2014. Rivera's response does not address this argument.

The undisputed facts of the March 15, 2014 incident include that Davis observed R. Rivera with blood on his face from a wound above his right eyebrow and R. Rivera informed Davis that he had been hit in the head with a bottle. Additionally, Davis sought to speak with Rivera, but she was crying uncontrollably; Rivera refused medical transport. Additionally, Davis took photographs of the scene. R. Rivera's statement that he had been hit with a bottle was corroborated by R. Rivera's injury. Defendants argue that additional facts learned by Davis after Rivera was arrested (e.g., Rivera stated she hit R. Rivera with a beer bottle) support a finding of probable cause. However, that information was not known to Davis at the time of the arrest.

Nonetheless, at the time of the arrest, the facts and circumstances within Davis's knowledge was sufficient to warrant a prudent person to believe that Rivera had committed the offense of disorderly conduct - fighting. *Peng*, 335 F.3d at 979 ("the presence of a factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses"). Indeed, R. Rivera provided a statement definitive enough to establish that a crime had been committed and his complaint was corroborated by the surrounding circumstances.

Rivera points out that, although both Rivera and R. Rivera had injuries, only Rivera was arrested for domestic violence. However, whether both individuals were injured or whether probable cause may or may not have existed to arrest someone else does not affect the determination that probable cause existed to arrest Rivera. *See generally Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 749, 766 (2005) (police have discretion to determine circumstances of a offense). The Court will grant summary judgment as to March 15, 2014, arrest of Rivera in favor of Defendants and against Rivera.

B. *April 2, 2014 Citation*

Rivera was cited for interfering with judicial proceedings on April 2, 2014, for allegedly violating her conditions of release. Specifically, Rivera was not to have contact with R. Rivera. A person commits interfering with judicial proceedings if such person knowingly disobeys or resists the lawful order, process or other mandate of a court. A.R.S. §13-2810 (A) (2). Here, Rivera has not disputed Defendants' evidence that Rivera continued to communicate with R. Rivera despite being told not to do so by Defendants. Similarly, Rivera does not dispute that R. Rivera was permitted a one time access to obtain his possessions. Again, whether or not probable cause existed to arrest someone else does not affect the determination that probable cause existed to arrest Rivera. The Court finds probable cause existed to cite Rivera. Summary judgment in favor of Defendants is

appropriate as to the April 2, 2014 citation.

## C. *April 19, 2014 Citation*

On April 19, 2014, Patterson and Davis responded to the Duquesne residence because it had been reported to them that Rivera was calling both the non-emergency and emergency line of the SCCSO. Rivera asserts she was seeking assistance because of Patterson's attempt to force her from her home. Defendants assert the dispatcher informed Patterson that Rivera was tying up the line, was refusing to give any information regarding an emergency and was just screaming.

Rivera argues probable cause did not exist for the citation of a violation of A.R.S. §13-2915(A)(2), which addresses the use of a party line. Defendants do not dispute that Rivera did not violate this statute. However, Patterson also wrote on the citation "preventing use of a phone in an emergency." (Rivera SOF, Ex 1, page 95).

While it is not disputed that Rivera did not violate A.R.S. § 13-2915(A)(2), the facts before the Court establish there was probable cause to suggest Rivera was committing a crime. *Tatum*, 441 F.3d at 1094; *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (finding that although the officers lacked probable cause to arrest for violating the statute they cited him under, there was probable cause to arrest defendant under another statute). Specifically, as summarized by Defendants' expert, "there was probable cause to believe [Rivera's] actions in calling 911 were unlawful based on ARS 40-340.C. She was not reporting an emergency and was restricting access to the 911 system. (Def. SOF, Ex. D). Rivera does not dispute the defense evidence that she called the 911 line multiple times and did not provide information about an emergency. Further, Patterson was entitled to rely upon the information provided by the dispatcher. *See, e.g., United States v. Hensley*, 469 U.S. 221, 231 (1985) (holding that police officers are entitled to rely on the reasonable information relayed to them from a police bulletin); *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990) (police officers making probable cause determinations must rely on "reasonably trustworthy" information); *United States v. Mounts*, 248 F.3d 712,

715 (7th Cir.2001) (holding officers are entitled to rely on reasonable information relayed from police dispatcher and it is immaterial that dispatcher's information is later determined to be faulty or inadequate); *United States v. Shareef*, 100 F.3d 1491, 1505-06 (10th Cir.1996) (upholding as reasonable officer's reliance on dispatcher's mistaken report of a NCIC match, rejecting argument officer should have conducted further investigation prior to investigative stop).

The Court finds probable cause existed to cite Rivera for abusing the 911 emergency line. Therefore, summary judgment in favor of Defendants is appropriate as to the April 19, 2014, citation.

D. *April 19, 2014 Arrest*

Rivera asserts probable cause did not exist to arrest her for obstructing governmental operations. A.R.S. § 13-2404. However, Rivera does not dispute probable cause existed for other offenses (e.g., DUI). As previously stated, because probable cause existed to arrest Rivera under another statute, the lack of probable cause for the original statute does not affect the validity of the arrest. *Edgerly.*

Similarly, although Patterson was prepared to have Rivera's vehicle towed prior to the DUI, the vehicle was ultimately towed incident to the DUI arrest. Patterson's subjective intent does not affect the ultimate valid reason for the tow. *Tatum.*

The Court finds probable cause existed for the April 19,2014 arrest of Rivera and seizure/tow of the vehicle. Summary judgment in favor of Defendants is appropriate.

E. *May 8, 2014 Citation*

Between April 21, 2014 and May 8, 2014, Rivera reported multiple times that T. Rivera was in violation of a protective order. On April 21, 2014 and May 1, 2014, it was explained to Rivera that T. Rivera was not listed on her order of protection and his conduct was not a violation of R. Rivera's order of protection. On May 8, 2014, after Rivera again reported T. Rivera for a violation of an order of protection, it was not only explained to

Rivera that T. Rivera's conduct did not violate an order of protection, but she was also cited for false reporting. Rivera does not dispute Defendants' evidence that it was explained to Rivera that T. Rivera's conduct did not violate an order of protection.

Although Rivera's expert opines that the knowing element of the crime was not present because Rivera appeared to be confused about the order of protection, Defendants had to consider the totality of the circumstances, including the prior explanations to Rivera, in determining whether probable cause existed to cite Rivera. This totality of circumstances leads to a conclusion that Rivera knew or should have known T. Rivera's conduct did not violate an order of protection. The Court finds probable cause existed to cite Rivera and summary judgment in favor of Defendants is appropriate.

## F. *June 17, 2014 Arrest*

Rivera asserts that probable cause did not exist for her arrest on June 1, 2014, because Defendants knew she had not been served with the amended implied consent affidavit.[15] However, Rivera has not pointed to any evidence that establishes that Defendants knew Rivera had not been served with the affidavit. Rather, Rivera conclusorily states Defendants knew. Moreover, Davis testified during his deposition that, when he ran Rivera's license, it came back in the system as suspended. Davis was entitled to rely upon this information. *Hensley*, 469 U.S. at 231.

Relying on her expert's opinion, Rivera also argues that the stop, arrest, booking, and towing of Rivera's car were retaliatory in nature and conducted on the orders of Patterson. An individual has a right "to be free from police action motivated by retaliatory animus but for which there was probable cause." *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006). To recover for such retaliation under § 1983, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse

---

[15]Rivera refers to June 14, 2014. However, the incident discussed occurred on June 17, 2014. (Def. SOF, Ex. R).

action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Id.*; *see also Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir.2013) (stating that a plaintiff must be able "to prove the officers' desire to chill [the plaintiff's] speech was a but-for cause of their allegedly unlawful conduct").

In this case, however, Rivera has not alleged a § 1983 retaliatory action. *See* Amended Complaint (Doc. 17). Moreover, it is not clear for what constitutionally protected activity Rivera asserts she is being retaliated against. As the elements of a retaliatory claim have not been established, the Court finds it appropriate to simply consider whether probable cause existed to arrest Rivera. As previously stated, Davis was entitled to rely upon the information he received that Rivera's license had been suspended. The Court finds probable cause existed to arrest Rivera for driving on a suspended licence and to tow the vehicle incident to arrest. The Court finds summary judgment in favor of Defendants is appropriate.

G. *June 24, 2014 Search*

Defendants assert that, because a search warrant to search the Elgin residence was issued, which is a full defense to any claim alleging a lack of probable cause, this claim must fail. It is not clear that Rivera is seeking to establish a claim as to this search. To any extent there is a claim as to this search, the Court agrees with Defendants that the finding of probable cause for a search by an impartial magistrate restricts any claim based on the search.[16] The Court finds summary judgment in favor of Defendants is appropriate.

---

[16]The Court notes that Rivera does not claim that material facts were omitted from the search warrant affidavit. *See e.g. Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011) (reversing summary judgment against § 1983 plaintiff where police omitted material fact from search warrant affidavit).

## H. *Malicious Prosecution*

Defendants argue that, because probable cause existed for each of the arrests of Rivera, the claim for malicious prosecution must fail. Indeed, the absence of probable cause is a necessary element of a § 1983 malicious prosecution claim. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015); *Joseph v. Markowitz*, 27 Ariz. App. 122, 125-26 (1976) (noting that initiation of action without probable cause is an element of malicious prosecution, without which, claim fails).

Rivera emphasizes that many of the offenses were ultimately dismissed and asserts the lack of probable cause for the original charges "was so apparent that it is inconceivable that charges would be filed for other than retaliatory and unlawful purposes." Response (Doc. 65), p. 17. However, the Court has found that probable cause existed for each of the citations and arrests. The malicious prosecution claim, therefore, necessarily fails. The Court will grant summary judgment in favor of Defendants as to the malicious prosecution claim.

## VII. *Monell* Claim

Defendants argue there is no factual basis to support any claim that Patterson or any deputy defendants should not have been hired, were inadequately trained or supervised, or that the Town of Patagonia had any unconstitutional policy or practice. Rivera's response does not address or dispute this argument. The Court agrees there is no factual dispute as to whether an existing policy or custom of the Town of Patagonia cause any constitutional deprivation. *Canton v. Harris*, 489 U.S. 378, 386-392 (1989). Summary judgment in favor of Defendants is appropriate.

## VIII. *Negligent Emotional Distress*

Defendants assert there is no dispute of a material fact as to a negligent infliction of emotional distress claim. This claim is based on the refiling of additional charges. However, Defendants argue that, because probable cause existed for the arrests and citations

on Rivera existed, the claims fail. In Arizona, a plaintiff in a negligent infliction of emotional distress action must witness an injury to a closely related person, suffer mental anguish manifested as physical injury, and be within the zone of danger. *Kaufman v. Langhofer*, 223 Ariz. 249, 256, 222 P.3d 272, 279 (App. 2009).

In this case, there is no evidence before the Court that any alleged mental anguish is accompanied by or manifested as a physical injury. *Keck v. Jackson*, 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979). "Transitory physical phenomena" such as weeping and insomnia "are not the type of bodily harm which would sustain a cause of action for emotional distress." *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 379, 752 P.2d 28, 32 (App.1988); *see Ball v. Prentice*, 162 Ariz. 150, 781 P.2d 628 (App.1989) (permitting action for negligent infliction of emotional distress where plaintiff was a victim, not a bystander, and sustained minor physical injuries as well as significant emotional distress).

The Court finds summary judgment in favor of Defendants as to the negligent infliction of emotional distress claim is appropriate.

IX. *Intentional Infliction of Emotional Distress*

Defendants also argue there are no issues of material fact in dispute as to Rivera's claim of intentional emotional distress. This claim requires extreme and outrageous conduct. *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). "A plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz v. Bell Atlantic Sys. Leasing Int'l., Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (App. 1995) (quoting *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (1969)). As the arrests and citations of Rivera were lawful and supported by probable cause, the Court finds there is no genuine issue of material fact as to whether Defendants' conduct was outrageous and extreme. Moreover, there is no evidence before the Court that Rivera suffered emotional distress "so severe that no reasonable man could be expected to endure it." *Pankratz v. Willis*, 155 Ariz. 8, 17, 744

P.2d 1182, 1191 (App. 1987); *see also Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 198-99, 650 P.2d 496, 500-01 (App. 1982) (summarizing examples of severe emotional distress, such as heart attack and nervous exhaustion, premature birth of dead baby, plaintiff found writhing in bed in extreme shock and hysteria, severe headaches, stress and anxiety that required hospitalization, etc.). Summary judgment in favor of Defendants as to the intentional infliction of emotional distress claim is appropriate.

X. *Equal Protection*

As argued by Defendants, if Rivera is attempting to set forth a claim for the "unequal enforcement of the laws," Rivera must show that Defendants acted with an intent or purpose to discriminate against Rivera based upon membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). There is no evidence before the Court that Rivera is a member of a protected class. Summary judgment in favor of Defendants is appropriate.

XI. *Due Process*

Rivera asserts that, on April 19, 2014, Patterson initiated contact with Rivera when he appeared at her residence to deliver a letter he had written on behalf of Valenzuela requesting that Rivera vacate the premises. The letter included: "you are in violation of ARS 13-1502 A. I and you are being advised to leave the residence and to not cause damage to the property. If you fail to leave the real property you will be arrested." (Def. SOF, Ex. J). The letter did not provide a date for compliance. Rivera argues that, because the requirements of the Arizona Residential Landlord and Tenant Act (e.g., eviction notice or court order) had not been complied with, Patterson violated her rights pursuant to the 4th and 14th Amendments.

Rivera also argues that her vehicle was seized without proper procedures.

To state a claim for a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege that a defendant denied plaintiff a specific right

- 25 -

protected by the federal constitution without procedures required by the Constitution to ensure fairness (procedural due process), or deliberately abused his power without any reasonable justification in aid of any government interest or objective and only to oppress in a way that shocks the conscience (substantive due process). *Daniels v. Williams*, 474 U.S. 327, 333 (1986). A procedural due process claims involves the denial of a specific right protected by the federal constitution without procedures required by the Constitution to ensure fairness. *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995); *Daniels*; *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, (1972). For Rivera to establish a procedural due process claim, there must be a liberty or property interest protected by the Constitution, a deprivation of the interest by the government, and a lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

As to the alleged threatened eviction, there is no evidence in the record before the Court that Defendants deprived Rivera of a protected liberty or property interest, only an alleged threatened deprivation. Rivera has not presented any authority that a threatened deprivation is sufficient for a § 1983 action. In other words, there is no factual dispute as to whether a procedural due process violation has occurred. To any extent, therefore, Rivera is arguing a procedural due process violation as to the alleged improper threatened eviction/criminal trespass arrest, the Court finds summary judgment in favor of Defendants is appropriate.

As to the seizure/towing of the vehicle, because the arrest of Rivera was lawful and made with probable cause, the towing of the vehicle was permissible. *See generally United States v. Camou*, 773 F.3d 932, 938 (9th Cir. 2014) (search/seizure of vehicle incident to arrest). In other words, the towing of the vehicle was within appropriate procedures. Summary judgment in favor of Defendants is appropriate.

XII. *Qualified Immunity*

Defendants argues that Patterson and Davis are entitled to qualified immunity. Qualified immunity protects public officials from liability for damages under § 1983 if their

actions did not violate clearly established rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). To overcome qualified immunity, a plaintiff in a § 1983 action has the burden to show that 1) the facts make out a § 1983 violation of the Plaintiff's federal or constitutional rights and 2) the right at issue is clearly established at the time of the alleged misconduct.

The defense of qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity balances the interests of "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223 (2009); *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998). Moreover, law enforcement officers "who 'reasonably but mistakenly concluded that probable cause is present'" and justifies an arrest are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987))

Taken in a light most favorable to Rivera, the undisputed facts do not show that Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). Here, the Court has found that the facts, both those undisputed and those construed in the light most favorable to Rivera, establish there was not a violation of Rivera's federal or constitutional rights. In other words, Defendants' conduct did not violate clearly established rights. Accordingly, Patterson and Davis are protected by qualified immunity. Summary judgment in favor of Defendants is warranted.

Accordingly, IT IS ORDERED:

1. Plaintiff's Motion to Strike (Doc. 59) is DENIED.

2. Plaintiff's Motion in Limine (Doc. 50) is DENIED.

3. Plaintiff's Motion for Partial Summary Judgment (Doc. 56) is DENIED.

4. Defendants' Motion for Summary Judgment (Doc. 53) is GRANTED.

5. Summary Judgment is awarded in favor of Defendants and against Plaintiff.

6. The Clerk of Court shall enter judgment in this case and shall then close its file in this matter.

DATED this 5th day of July, 2018.

_____
Cindy K. Jorgenson
United States District Judge